1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GUCOVSCHI ROZENSHTEYN, PLLC.**
Adrian Gucovschi (State Bar No. 360988)
Nathaneil Haim Sair (*pro hac vice* forthcoming)
140 Broadway, Fl. 46
New York, NY 10005
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gr-firm.com
        nsari@gr-firm.com

*Attorneys for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMILLA BLACKETT, individually and on behalf of all other persons similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>VITAL AMINE INC.,<br><br>                    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Camilla Blackett ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Vital Amine Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on her personal knowledge.

## **INTRODUCTION**

1.      Defendant formulates, manufactures, advertises, and sells the popular "Ora Organic Daily Superfood" protein supplements (the "Products")[1] throughout the United States, including in California. Defendant markets its Products in a systematically misleading manner by misrepresenting the quantity and quality of the protein contained therein. Specifically, Defendant's Products are comprised of vegan protein sources that do not provide the same nutritional benefits as whey protein.

2.      Because Defendant's sales are driven by consumers seeking protein supplementation, Defendant prominently displays that the Products contain "23[g]rams Protein" on the Products' front labels while failing to include the percent of daily value ("%DV") for protein in the Nutrition Facts Panel ("NFP") showing the adjusted amount after accounting for its inferior protein sources. The Products, along with their NFP, are depicted below:

---

[1] The Products are comprised of the following flavors: vanilla, vanilla chai, chocolate, and unsweetened & unflavored. An illustration of the Products can be found on Defendant's website: https://ora.organic/products/organic-protein-powder?variant=44515329171 (last accessed June 6, 2025).








3.     As a result of its protein misrepresentations and omissions, Defendant misleads consumers into believing that the Products provide more protein than they actually do.

4.     Accordingly, Plaintiff and those similarly situated suffered an injury in fact as a result of Defendant's misleading and deceptive practices set forth herein.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and Plaintiff, as well as most members of the proposed class, are citizens of states different from Defendant. This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

6.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because Plaintiff is a citizen of California who resides in this District, and because Plaintiff purchased the

Product in this District. Moreover, Defendant purposefully availed itself of this District through its distribution, advertisement, and sale of the Product, which are the subject of the present complaint, in this District.

**THE PARTIES**

7.      Plaintiff Camilla Blackett is a citizen of California who resides in Los Angeles, California. Plaintiff Camilla Blackett purchased the chocolate-flavored Product for her personal use during the applicable statute of limitations while residing in Los Angeles, California. Plaintiff's most recent purchase was Defendant's chocolate-flavored Product, which she purchased on Defendant's Amazon.com listing for approximately $49.99 on or about January of 2024.[2] Prior to purchasing the Product, Plaintiff saw and read the Product's packaging, which stated that it provides "23g[rams] PROTEIN." Plaintiff relied on this representation by believing that the Product would actually provide the specific amount of protein claimed on the front label in a form that human bodies could utilize. Plaintiff relied on the Product to meet her protein dietary needs. Had Defendant complied with the law and not made the protein claims on the front of the packages, she would not have been drawn to the Products and would not have purchased them. At a minimum, Plaintiff would have paid less for each Product.

8.      In addition, Plaintiff Blackett regularly checks the NFP before purchasing any protein supplement, including the %DV column for protein when manufacturers provide it, and she uses that information as a basis of comparison between similar products. Manufacturers do not always disclose a %DV for protein, but when they do, she selects the product that provides more of the recommended daily amount of protein (*i.e.*, the one with a higher %DV). When purchasing Defendant's Product on or about January 2024, Plaintiff Blackett looked at and read the NFP, which stated that the Product contained 23 grams of protein, although the NFP had an empty %DV.

---

[2] Amazon.com: Ora Organic Vegan Protein Powder - 23g Plant Protein for Women and Men - Chocolate Flavor 20 Servings, Bloat-Free, Gluten Free, Non-GMO, No Artificial Sweeteners : Health & Household the listing can also be found through the following link: https://www.amazon.com/dp/B06XTD74VD/ref=twister_B0CCK2GJ85?_encoding=UTF8&th=1 (last accessed June 6, 2025).

In so doing, Plaintiff relied on the representation that the stated grams of protein in the Products NFP were accurate and their omitted %DV was otherwise comparable to other complete protein supplements (*i.e.*, that the 23 grams equaled 46% daily value). Had Defendant adequately disclosed the corrected amount of protein per serving for each Product expressed as a %DV, as FDA regulations require, Plaintiff Blackett would not have purchased the Products or would have, at minimum, paid less for them

9.     Defendant Vital Amine Inc. ("Defendant") is a Texas corporation with its principal place of business located at 411 W Monroe St., Austin, TX, 78704. At all times relevant to this Complaint, Defendant has advertised, marketed, distributed, or sold the Product to consumers throughout the United States and the State of California. Defendant has sold the Products directly to consumers via the internet and through third-party retail stores throughout the United States, including this District. Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling for the Products.

## **FACTUAL ALLEGATIONS**

### *Overview of FDA regulations regarding protein claims*

10.     It is axiomatic that the amount of reported protein contained within Defendant's Products is material to any consumer seeking to purchase a protein supplement. To capitalize on this trend, Defendant prominently claims on the front label of the Products that they contain "23g Protein." Consumers, in turn, reasonably expect that the Products will actually provide the amount of protein claimed on the front of the Product's package in a form the body can use.

11.     The Food and Drug Administration ("FDA") prohibits such front label protein claims unless manufacturers also provide additional information in the nutrition fact panel about how much of the recommended daily value for protein the product will actually provide. 21 C.F.R. §§ 101.9(c)(7)(i), 101.13(b), (n). That is because the FDA recognizes that (1) when manufacturers tout an amount of protein on the front label, that amount is likely to be material to purchasing decisions, even though reasonable consumers may not know the total amount of protein they need to ingest on a daily basis, and (2) not all proteins are the same in their ability to meet human

nutritional requirements, so a simple statement about the number of grams does not actually inform consumers about how much usable protein they are receiving. Some proteins are deficient in one or more of the nine amino acids essential to human protein synthesis and/or are not fully digestible within the human gut. When the human body uses up the least prevalent essential amino acid from a food product, protein synthesis shuts down and all of the remaining amino acids from that protein source degrade mostly into waste. Likewise, whatever portion of a protein source is not digestible is similarly unavailable for protein synthesis. A protein's ability to support human nutritional requirements is known as its "quality."

12.    The FDA required method for measuring protein quality is called the "Protein Digestibility Corrected Amino Acid Score"—known by its acronym PDCAAS (pronounced PeeDee-Kass). It combines a protein source's amino acid profile and it's percent digestibility into a discount factor ranging from 0.0 to 1.0 that, when multiplied by the total protein quantity, shows how much protein in a product is available to support human nutritional requirements. The regulations term this the "corrected amount of protein per serving." 21 C.F.R. § 101.9(c)(7)(ii). For example, a PDCAAS of .5 means that only half of the protein in that product is available to support human protein needs. Thus, if a product contains 10 grams total protein per serving with a PDCAAS of .5, the corrected amount of protein would be only 5 grams per serving. As a result, protein supplements can vary widely in their ability to support human protein needs—even between two comparator products with the same total protein quantity.

13.    Because consumers are generally unaware of the usability of various proteins and may even be unaware of the total amount of usable protein they should ingest each day, the FDA prohibits manufacturers from advertising or promoting their products with a protein claim unless they have satisfied two requirements. First, the manufacturer must calculate the "corrected amount of protein per serving" based on the quality of the product's protein using the PDCAAS method. Second, the manufacturer must use the PDCAAS computation to provide "a statement of the corrected amount of protein per serving" in the NFP "expressed as" a percent daily value ("%DV") and placed immediately adjacent to the statement of protein quantity. 21 C.F.R. § 101.9(c)(7)(i)-

(iii). The %DV is the corrected amount of protein per serving divided by the daily reference value for protein of 50 grams. *Id.* Using the same example of a product containing 10 grams total protein per serving with a PDCAAS of .5, the %DV is 10% (5g/50g). On the other hand, if all of the protein in the product were useful in human nutrition, the %DV would be 50% (25g/50g). The FDA regulations that govern nutrient content claims are also clear that the manufacturer may not make any front label claims about the amount of protein in the product unless it complies with these two requirements. *See* 21 C.F.R. § 101.13(b) ("A nutrient content claim[] may not be made on the label…unless the claim is made in accordance with this regulation [i.e., § 101.13]…" and (n) ("[n]utrition labeling in accordance with § 101.8…shall be provided for any food for which a nutrient content claim is made"); *accord* 58 Fed. Reg. 2302, 23310 (manufacturer can only make a "nutrient content claim…on the label or in labeling of a food, provided that the food bears nutrition labeling that complies with the requirements in proposed § 101.9.").

14.    Identical federal and California laws regulate the content of labels on packaged food. The requirements of the FDCA, and its labeling regulations, including those set forth in 21 C.F.R. §§ 101, 102, were adopted by the California legislature in the Sherman Food Drug & Cosmetic Law (the "Sherman Law"). California Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state.") The federal laws and regulations discussed herein are applicable nationwide to all sales of packaged food products. Additionally, none of the California laws sought to be enforced here impose different requirements on the labeling of packaged food for sale in the United States.

15.    Indeed, when promulgating 21 C.F.R. § 101.9(c)(7), the FDA explained in published guidance that "Information on protein quantity alone can be misleading on foods that are of low protein quality." It also explained that it was prohibiting manufacturers from making any protein claims at all unless the manufacturer provides a statement of the corrected amount of protein per serving in the NFP based on PDCAAS because "nutrition labeling must allow consumers to readily identify foods with particularly low quality protein to prevent them from

being misled by information on only the amount of protein present." 58 Fed. Reg. 2079 at 2101-2.

16.    In addition to regulating the NFP, the FDA has promulgated a separate set of regulations that govern nutrient content claims on the front of a package. 21 C.F.R. § 101.13. A nutrient content claim is a claim that "expressly or implicitly characterizes the level of a nutrient." 21 C.F.R. § 101.13(b). "Express" nutrient content claims include any statement outside the Nutrition Facts Panel, about the level of a nutrient. 21 C.F.R. 101.13(b)(1); 21 C.F.R. § 101.13(c). Stating information from the nutrition facts panel (such as grams of protein per serving) elsewhere on the package necessarily constitutes a nutrient content claim. 21 C.F.R. § 101.13(c).

17.    A manufacturer cannot make a nutrient content claim in the form of a "statement about the amount or percentage of a nutrient" if the statement is "false or misleading in any respect." 21 C.F.R. 101.13(i)(3). If it is, then "it may not be made on the label." 21 C.F.R. § 101.13(b). This is true even if the same amount appears in the nutrition facts panel. 21 C.F.R. § 101.13(c). The FDA explained in promulgating section 101.13(i) that the regulation was necessary "since many consumers have a limited knowledge and understanding of the amounts of nutrients that are recommended for daily consumption," which means that "a statement declaring that the product contained a specified amount of a nutrient could be misleading. By its very presence, such a statement could give consumers who were unfamiliar with the dietary recommendations the false impression that the product would assist them in maintaining healthy dietary practices relative to the amount of the nutrient consumed when it, in fact, would not." 56 Fed. Reg. 60421. The rules are different for amounts in the NFP and nutrient content claims because a voluntary nutrient declaration on the front panel "is viewed by the agency as an effort to market the food as a significant source of nutrients." 56 Fed. Reg. 60366.

18.    While a required statement inside of the NFP escapes regulations reserved for nutrient content claims (21 C.F.R. § 101.13(c)), the identical statement outside of the NFP is still considered a nutrient content claim and is therefore subject to 21 C.F.R. § 101.13(i)(3). 21 C.F.R. § 101.13(c). Indeed, the Ninth Circuit has specifically held that "a requirement to state certain facts in the nutrition label is not a license to make that statement elsewhere on the product." *Reid v.*

*Johnson & Johnson,* 780 F.3d 952, 960 (9th Cir. 2015).

19.    Under the FDCA, the term false has its usual meaning of "untruthful," while the term misleading is a term of art that covers labels that are technically true but are likely to deceive consumers. Similarly, both the FDCA and California's Sherman Law provide that a food is misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a); s*ee also* California Health & Safety Code § 110660.

***Defendant's Products Violate the FDA and Sherman Law Regulations***

20.    The primary protein sources in Defendant's Products are peas, rice, sacha inchi, quinoa, and amaranth. The quality protein and the PDCAAS score for peas is approximately 0.8, 0.4 for rice, 0.8 for sacha inchi, 0.8 for quinoa, and 0.3 for amaranth. Although combining peas and rice could theoretically reach a complete amino acid profile, Defendant's inclusion of other ingredients reduces the pea-to-rice ratio necessary to achieve this amount.[3] As such, Defendant's Products lack the nutritional profile to constitute a 100% PDCAAS score. Nevertheless, Defendant failed to provide in the NFP a statement of the corrected amount of protein per serving calculated according to the PDCAAS methodology and expressed as a %DV.

21.    Accordingly, the "23g PROTEIN" claims on the front of the Products' packages are unlawful in violation of parallel state and federal laws because Defendant did not comply with the regulatory requirements for making a protein claim. 21 C.F.R. § 101.9(c)(7)(i) & (iii), 101.13(b), (n). Furthermore, the failure to include a statement of the corrected amount of protein inside the NFP also rendered the NFP itself unlawful. *Id.* § 101.9(c)(7)(i). Defendant's failure to comply with this requirement renders its front label protein claim unlawful *per se* and the Products misbranded pursuant to 21 § 101.13(n) and (b), as well as California Health & Safety Code § 110660, *et seq.*

22.    Defendant's standalone, front label protein quantity claims are also misleading, and

---

[3] While pea and rice proteins can theoretically compensate for each other's limitations (*e.g.*, lysine in peas offsets methionine in rice), the addition of sacha inchi, quinoa, and amaranth introduces new limiting amino acids (valine in amaranth, leucine in sacha inchi) that preclude a complete protein profile. Even if blended in precise ratios, the inclusion of amaranth (PDCAAS: 0.24–0.36 for raw flour) and quinoa (valine-limited) precludes a complete PDCAAS score.

therefore prohibited under 21 § 101.13(i)(3), (b), and (n) due to Defendant's failure to include a statement of the corrected amount of protein per serving in the NFP calculated using the PDCAAS method and expressed as a %DV. Consumers have a "limited knowledge and understanding of the amount of [protein] that [is] recommended for daily consumption," let alone an understanding of the science behind protein quality and how different types of proteins are used and absorbed in the body. 56 Fed. Reg. 60421. The FDA requires a statement of the corrected amount of protein per serving in the NFP precisely to ensure that "consumers are not misled by information on only the amount of protein present" in a product with low quality protein. 58 Fed. Reg. 2079 at 2101-2. Defendant's failure to provide it rendered the label misleading.

23.    Defendant's marketing, advertising, and sale of the Products violates the misbranding provisions of the Sherman Law (California Health & Safety Code § 110660, *et. seq.*), including but not limited to:

a.    Section 110660 (a food is misbranded if its label is false or misleading in any particular)

b.    Section 110665 (a food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in 21 U.S.C. Sec. 343(q));

c.    Section 110705 (a food is misbranded if words, statements and other information required by the Sherman Law to appear on food labeling are either missing or not sufficiently conspicuous);

d.    Section 110760 (making it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded);

e.    Section 110765 (making it unlawful for any person to misbrand any food); and

f.    Section 110770  (making it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food).

24.    Defendant's marketing, advertising, and sale of the Products also violates the false advertising provisions of the Sherman Law (California Health & Safety Code § 110390, *et. seq.*), including, but not limited to:

      a.   Section 110390 (making it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product;);

      b.   Section 110395 (making it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely or misleadingly advertised food); and

      c.   Sections 110398 and 110400 (making it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised).

25.     Defendant has also violated the FDCA, and the standards set by FDA regulations, including but not limited to 21 U.S.C. § 343(a), 21 C.F.R. § 101.9 (c)(7), 21 C.F.R. § 101.13(i)(3), (b), (n), 21 C.F.R. § 101.9(h)(d), and 21 C.F.R. 101.9(e)(3) which have been incorporated by reference in the Sherman Law, by failing to include on the Products packaging the nutritional information required by law.

***Defendant's Protein Representations are False and Misleading***

26.     In addition to being unlawful, Defendant's prominent protein claims on the front of the Products' packaging while failing to include a statement of the corrected amount of protein per serving expressed as a %DV in the NFP are also likely to mislead consumers. Consumers reasonably expect that Defendant's Products will provide the full amount of protein per serving claimed on the front of the package. But Defendant's Products do not do so and instead contain low-quality proteins. Had Defendant included a statement of the corrected amount of protein per serving in the NFP, as they were required to do under the law, it would have revealed that the Products contain low-quality proteins that do not account for the nutritional amount of protein on the Products' packaging. That information was material to reasonable consumers.

27.     A reasonable consumer would expect that the Products provide what Defendant identifies them to provide on the product labels and that the labels would not be contrary to the policies or regulations of the State of California and/or the FDA. For example, a reasonable consumer would expect that when Defendant labels the Products as containing "23g[rams]

PROTEIN," the Products would provide 23 grams of protein per serving in a form their bodies could use. Because Defendant did not conduct PDCAAS and provide a statement of the corrected amount of protein per serving, expressed as a corrected %DV in the NFP, consumers could not have discovered that the Products provide significantly less protein.

28.    Consumers lack the meaningful ability to test or independently ascertain the truthfulness of Defendant's food labeling claims, especially at the point of sale. Reasonable consumers, when looking at the front label of the Products, believe that the Products provide the amount of protein represented therein. Because Defendant does not include legally required information as to the quality of the protein in the NFP via the statement of corrected amount of protein expressed as a %DV, consumers do not have any reason to think otherwise. Reasonable consumers do not walk around with the PDCAAS values for various protein sources in their heads. They would not know the true amount of protein the Products provide nutritionally merely by looking elsewhere on the Products' packaging. That discovery requires investigation well beyond what is advertised and knowledge of food chemistry beyond that of the average consumer. An average consumer does not have the specialized knowledge necessary to ascertain that the Products do not provide the number of grams of protein that is represented on their packaging. An average consumer also lacks the specialized knowledge necessary to determine the PDCAAS for the Products. The average reasonable consumer had no reason to suspect that Defendant's representations on the packages were misleading. Therefore, consumers had no reason to investigate whether the Products actually do provide the amount of protein per serving that the labels claim they do and reasonably relied on Defendant's representations regarding the nature of the Products.

29.    Defendant intends and knows that consumers will and do rely upon food labeling statements in making their purchasing decisions. Label claims and other forms of advertising and marketing drive product sales, particularly if placed prominently on the front of product packaging, as Defendant has done with the claims on the Products that they contain and provide specific amounts of protein per serving.

30.    In making unlawful, false, misleading, and deceptive representations, Defendant distinguishes the Products from its competitors' products. Defendant knew and intended that consumers would purchase and pay a premium for products labeled with protein claims. By using this branding and marketing strategy, Defendant is stating that the Products are superior to, better than, and more nutritious and healthful than other products that do not make protein claims, or that properly provide the required statement of the corrected amount of protein as determined by the PDCAAS method and expressed as a %DV.

31.    Because consumers pay a price premium for products that make protein claims, and also pay a premium for products that provide more protein, by labeling its Products with protein claims and misrepresenting the required statement of the corrected amount of protein per serving, Defendant is able to both increase its sales and retain more profits.

32.    Defendant engaged in the practices complained of herein to further its private interests of: (i) increasing sales of the Products while decreasing the sales of competitors that do not mislead consumers about the quality of the protein in its products, and/or (ii) commanding a higher price for its Products because consumers will pay more for the Products due to consumers' demand for products with protein claims.

33.    The market for protein products is continuing to grow and expand, and because Defendant knew consumers rely on representations about the number of grams of protein in food products, Defendant has an incentive to continue to make such unlawful and misleading representations. In addition, other trends suggest that Defendant has no incentive to change their labeling practices.

34.    For example, one market analysis revealed that between 2013-2017, product launches with a protein claim grew 31%.[4]

35.    To capitalize on the growing market, the Defendant continues to launch new product lines and flavors to diversify its portfolio and maintain a competitive edge. It is therefore

_____

[4] https://www.bakeryandsnacks.com/Article/2018/11/26/10-key-snack-trends-to-watch/?utm_source=copyright&utm_medium=OnSite&utm_campaign=copyright (last accessed May 23, 2025).

likely that Defendant will continue to unlawfully and/or misleadingly advertise the Products and perpetuate the misrepresentations regarding the protein in the Products.

## CLASS ACTION ALLEGATIONS

36.    Plaintiff brings this action on behalf of herself and all other similarly situated persons pursuant to Federal Rules of Civil Procedure 23(a), (b)(1) and (b)(3).

37.    Plaintiff seeks to represent all persons in the United States who purchased Defendant's Products (the "Class").

38.    The Class does not include (1) Defendant, its officers, and/or its directors; or (2) the Judge to whom this case is assigned and the Judge's staff.

39.    Plaintiff reserves the right to amend the above class definitions and add additional classes or subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

40.    ***Community of Interest***: There is a well-defined community of interest among members of the Class, and the disposition of the claims of these members of the Class in a single action will provide substantial benefits to all parties and to the Court.

41.    ***Numerosity***: While the exact number of members of the Class is unknown to Plaintiff at this time and can only be determined by appropriate discovery, upon information and belief, members of the Class number in the millions. The precise number of the members of the Class and their identities are unknown to Plaintiff at this time but may be determined through discovery. Members of the Class may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

42.    ***Existence and predominance of common questions of law and fact***: Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individuals of the Class. These common legal and factual questions include, but are not limited to:

(a)    Whether Defendant's protein representation and omissions about the Products are false and misleading in violation of California's False Advertising Law ("FAL"),

Cal. Bus. & Prof. Code §§ 17500, *et seq*., California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, and/or California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

(b)    Whether Plaintiff and the members of the Class have suffered damages as a result of Defendant's actions and the amount thereof; and

(c)    Whether Plaintiff and the members of the Class are entitled to attorney's fees and costs.

43.    ***Typicality***: The claims of the named Plaintiff are typical of the claims of other members of the Class in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased Defendant's Products, and suffered a loss as a result of those purchases.

44.    ***Adequacy***: Plaintiff will fairly and adequately represent and protect the interests of the Class as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff is an adequate representative of the Class because he has no interests that are adverse to the interests of the members of the Class. Plaintiff is committed to the vigorous prosecution of this action and, to that end, Plaintiff has retained skilled and experienced counsel.

45.    ***Superiority***: A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

(a)    The expense and burden of individual litigation makes it economically unfeasible for members of the Class to seek to redress their claims other than through the procedure of a class action;

(b)    If separate actions were brought by individual members of the Class, the resulting duplicity of lawsuits would cause members of the Class to seek to redress their claims other than through the procedure of a class action; and

(c)    Absent a class action, Defendant likely will retain the benefits of its wrongdoing, and there would be a failure of justice.

**CAUSES OF ACTION**

**COUNT I**
**Violation of California's False Advertising Law,**
**Cal. Bus. & Prof. Code § 17500, et seq.**
**(On Behalf of Plaintiff and the Class)**

46.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

47.     The FAL makes it "unlawful for any person…to make or disseminate or cause to be made or disseminated before the public in this state, … [in] any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or those services, professional or otherwise, or … performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

48.     Defendant committed acts of false and misleading advertising, as defined by the FAL, by using statements to promote the sale of its Products by representing (by omission and commission) that the Products contained more grams of protein per serving than they actually provided, and that the Products were appropriate for meeting protein dietary needs. Defendant had a duty to disclose the corrected amount of protein per serving in the NFP, as calculated according to the PDCAAS method, which Defendant failed to do.

49.     Defendant knew or should have known that its advertising claims are misleading and/or false.

50.     Defendant knew or should have known, through the exercise of reasonable care, that its representations were false and misleading and likely to deceive consumers and cause them to purchase Defendant's Products.

51.     Defendant's wrongful conduct is ongoing and part of a general practice that is still being perpetuated and repeated throughout the State of California and nationwide.

52.     Plaintiff and the Class Members seek restitution, attorneys' fees, and all other relief that the Court deems proper.

53.     Plaintiff lacks an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiff and Class Members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles Plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the FAL entail fewer elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

54.     Equitable relief is also appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from her purchase of the Product are determined to be an amount less than the premium price of the Product. Without compensation for the full premium price of the Product, Plaintiff would be left without the parity in purchasing power to which she is entitled.

**<u>COUNT II</u>**
**Violation of California's Consumers Legal Remedies Act ("CLRA"),**
**California Civil Code § 1750, et seq.**
**(On Behalf of Plaintiff and the Class)**

55.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

56.     Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

57.     Civil § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

58.     Civil § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

59.     Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Product to unwary consumers.

60.     Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

61.     On April 7, 2025, Plaintiff notified Defendant in writing, by certified mail, of the violations alleged herein and demanded that Defendant remedy those violations pursuant to Cal. Civ. Code § 1782. Defendant failed to correct its business practices or provide the requested relief within 30 days.

62.     Pursuant to California Civil Code §§1780(a)(1)-(5) and § 1780(e), Plaintiff and the Class Members seek monetary damages from Defendant, reasonable attorneys' fees and litigation costs, and any other relief the Court deems proper under the CLRA.

## COUNT III
### Violation of California's Unfair Competition Law, ("UCL"),
### Cal. Bus. & Prof. Code §§ 17200, *et seq*.
### (On Behalf of Plaintiff and the Class)

63.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

64.     The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act." Cal. Bus. & Prof. Code § 17200.  A business act or practice is "unlawful" if it violates any established state or federal law. A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204. Such a person may bring

such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

65.    Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code §§ 17200, *et seq.*

66.    Defendant has violated the UCL's proscription against engaging in Unlawful Business Practices as a result of its violations of the FAL, Cal. Bus. & Prof. Code § 17500, *et seq.*; CLRA, Cal. Civ. Code § 1770*, et seq.*; and the Sherman Law, including without limitation, California Health & Safety Code §§ 110390, 110395, 110398 and 110400; the misbranded food provisions of the Sherman Law (Article 6), including without limitation, California Health & Safety Code §§ 110660, 110665, 110705, 110760, 110765, and 110770; and and federal laws regulating the advertising and branding of food in 21 U.S.C. § 343(a), *et seq.* and FDA regulations, including but not limited to 21 C.F.R. § 101.9 (c)(7), 21 C.F.R. § 101.13(i)(3), (b), (n), 21 C.F.R. § 101.9(h)(d), and 21 C.F.R. 101.9(e)(3), which are incorporated into the Sherman Law (California Health & Safety Code §§ 110100(a), 110380, and 110505).

67.    In particular, Defendant has engaged, and continues to engage, in unfair and fraudulent practices by, without limitation, the following: (i) unlawfully making a protein claim on the front of the package without complying with the regulatory requirements for making protein claims set forth in 21 C.F.R. § 101.9(c)(7)(i)-(iii) and incorporated by reference by California's Sherman law; (ii) failing to provide a statement of the corrected amount of protein per serving in the NFP, calculated according to the PDCAAS method and expressed as a %DV, as required by FDA regulations; and (iii) misleading reasonable consumers regarding the amount of protein the Products provide nutritionally in a form that humans can use.

68.    Defendant has also violated the UCL's proscription against engaging in Unfair Business Practices. Defendant's acts, omissions, misrepresentations, practices and

non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200, *et seq*. in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. Defendant's deceptive business model has led consumers to purchase the Products over other comparable dietary supplements that properly represent their nutritional value. Such injury is not outweighed by any countervailing benefits to consumers or competition. Indeed, no benefit to consumers or competition results from Defendant's conduct. Since consumers reasonably rely on the Products' labels, and thus also their omissions, consumers could not have reasonably avoided such injury. *Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 597-98 (2009); *see also Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010) (outlining the third test based on the definition of "unfair" in Section 5 of the FTC Act). Furthermore, Defendant's packaging and sale of the Products is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the FDA and and the Sherman Law.

69.    Finally, Defendant has further violated the UCL's proscription against engaging in Fraudulent Business Practices. Defendant's claims, omissions, and misleading statements, as more fully set forth above, were false, misleading and/or likely to deceive the consuming public.

70.    Pursuant to California Business and Professional Code § 17203, Plaintiff and the Class Members seek restitution, attorneys' fees, and all other relief that the Court deems proper.

71.    Plaintiff lacks an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiff and Class Members are inadequate because they are not equally prompt, certain, and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant

wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles Plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the UCL entail fewer elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

72.      Equitable relief is also appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from her purchase of the Products are determined to be an amount less than the premium price of the Products. Without compensation for the full premium price of the Product, Plaintiff would be left without the parity in purchasing power to which she is entitled.

**COUNT IV**
**Unjust Enrichment**
**(On behalf of Plaintiff and the Class)**

73.      Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

74.      Plaintiff and the Class Members conferred benefits on Defendant by purchasing the Products.

75.      Defendant was unjustly enriched in retaining the revenues derived from Plaintiff and the Class Members' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because Defendant misrepresented the benefits of the Products.  These omissions and misrepresentations caused injuries to Plaintiff and the Class Members because they would not have purchased the Products if the true facts were known.

76.      Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and the Class Members is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

77.      Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph as an alternative to any contrary allegations in her

other causes of action, in the event that such causes of action will not succeed.  Plaintiff and the Class Members may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires them to show classwide reliance and materiality beyond the element required under unjust enrichment.  In addition, Plaintiff and the Class Members may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because an action under unjust enrichment imposes no such *mens rea* requirement and liability exists even if Defendant acted in good faith. Restitution may also be more certain, prompt, and efficient than other legal remedies requested herein.  The return of the full premium price will ensure that Plaintiff and the Class are in the same place they would have been in had Defendant's wrongful conduct not occurred, *i.e.*, the position to make an informed decision about the purchase of the Products absent omissions and misrepresentations with the full purchase price at their disposal. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class Members suffered injury and seek the disgorgement and restitution of Defendant's wrongful profits, revenue, and benefits, plus interest, to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

## COUNT V
### Breach of Express Warranty
### (On Behalf of Plaintiff and the Class)

78.    Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

79.    Plaintiff brings this claim under the laws of the State of California.

80.    As the manufacturer, marketer, advertiser, and promoter of the Products, Defendant issued an express warranty by representing that the Products have a certain amount of protein that they do not have.

81.    Defendant's representations were part of the basis of the bargains upon which the goods were offered for sale and purchased by Plaintiff and the Class Members.

82.    As a direct and proximate result of Defendant's breach, Plaintiff and the Class Members were injured because they: (1) paid money for the Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant had advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than Defendant represented. Had Defendant not breached its express warranty by making the false representations alleged herein, Plaintiff and the Class Members would not have purchased the Products or would not have paid as much as they did for them.

83.    As a result, Plaintiff and the Class Members suffered and continue to suffer damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as a representative of the Class; and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c) For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

(d) For an order of restitution and all other forms of equitable monetary relief;

(e) For prejudgment interest on all amounts awarded; and

(f) For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: June 9, 2025

Respectfully submitted,

**GUCOVSCHI ROZENSHTEYN, PLLC.**

By:    _/s/ Adrian Gucovschi_
Adrian Gucovschi (State Bar No. 360988)
Nathaniel Haim Sari (*pro hac vice* forthcoming)
140 Broadway, Fl. 46
New York, NY 10005
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gr-firm.com

*Attorneys for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Adrian Gucovschi, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am a partner at Gucovschi Rozenshteyn PLLC, counsel of record for Plaintiff Camilla Blackett in this action. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the transaction alleged in the Complaint occurred in Los Angeles County. Plaintiff Camilla Blackett alleges she purchased the Product in this County.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed in Miami, Florida, this 9th day of June, 2025.

 _/s/ Adrian Gucovschi_
Adrian Gucovschi